**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

ALFRED NORRINGTON,

    PLAINTIFF,

v.

DAVID AKINS AND BLAIR
LOGISTICS, LLC.

    DEFENDANTS.

CIVIL ACTION NO.
1:22-cv-00441-MLB

---

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SANCTIONS
AGAINST ORTHO SPORTS AND SPINE PHYSICIANS, LLC**

---

COME NOW, Defendants David Akins and Blair Logistics, LLC, and file this brief in support of their Motion for Sanctions against non-party Ortho Sport and Spine Physicians, LLC ("OSSP"). This motion follows an ongoing dispute with OSSP concerning its relationship with Plaintiff Alfred Norrington's counsel, the Witherite Law Firm, as well as the reasonableness of its billing practices and the potential biases of its physicians that provide treatment to plaintiffs in personal injury cases that are treated on a lien. This dispute has spanned over three years, and encompassed seven different joint discovery statements and hearings. At each turn, OSSP has established a pattern of discovery abuses and delay tactics, and has done just enough to squeak by to the next dispute in the hopes that Defendants would grow tired and give up. The Court

recognized OSSP's underhanded tactics, and permitted Defendants to proceed forward with a Motion for Sanctions at this juncture, which Defendants submit herewith.

## I.  OSSP's HISTORY OF DISCOVERY ABUSES

Before the specifics of this case are addressed, it is important for the Court to know that this is not the first instance where OSSP has abused the discovery process in an effort to prevent discovery of its relationship with plaintiff's attorneys, and what they routinely bill verses accept for medical charges in litigated cases.  Judge Fortner of the Douglas County State Court found in a case involving a similar discovery dispute with OSSP that it was using third-party entities to silo discoverable information finding that OSSP was playing "shell game[s]" with these companies that could result in the extreme sanction of the exclusion of evidence of OSSP's doctor's treatment of the plaintiff.  (See Judge Fortner Order, Mar., 28, 2025, Ex. 1 at 8-9; 12.)  Similarly, Judge Norris of the Superior Court of Oconee County issued a detailed order specifying its findings of how OSSP was using shell companies to avoid discovery. (See Judge Norris Order, May, 25, 2025, Ex. 2 at 2-4.)

In regard to improper efforts to prepare witnesses for 30(b)(6) notices, OSSP has been sanctioned by at least one federal court judge for putting up the same kind of ill-prepared witnesses as they have done here.  Judge Geraghty issued a show cause order after Yasha Heidari put up his neighbor's brother, a person who had no connection to OSSP, as a 30(b)(6) witness. (See Judge Geraghty Order, Oct. 21, 2023, Ex. 3 at 12.)

Unsurpisingly, Mr. Heidari's neighbor's brother "did not have knowledge about the most basic aspects of [OSSP's] business and personnel," and was not able to testify about topics that were plainly set out in the notice. (Id. at 17, 19.)  At the show cause hearing, where sanctions were found warranted, OSSP acknowledged that its corporate representative "fell short in some respects" and OSSP's counsel represented to Judge Geraghty that it "was taking steps to avoid similar problems in the future." (See Judge Geraghty Order, Nov. 15, 2023, Ex. 4 at 2.)

## II. OSSP's PATTERN OF DISCOVERY ABUSES IN THIS CASE

It has become apparent that OSSP intends at whatever cost necessary to avoid disclosing the information that Defendants are seeking.  It has demonstrated a lengthy pattern of delays, presumably under a perceived war of attrition, that has caused Defendants extensive and unnecessary legal costs for what should have been addressed through compliance with simple discovery procedures.  The following is a chronological breakdown of OSSP's discovery failures and abuses to date in this case.

### *First Joint Statement*

This lengthy discovery dispute started back in March of 2023 after Defendants served OSSP with a subpoena for records which sought, in addition to copies of Plaintiffs' bills and records from OSSP, referral information (Topics 2 & 6); documents concerning marketing by OSSP to the Witherite Firm (Topic 8); communications between OSSP and Witherite (Topic 4); and spreadsheets indicating the number of

patients Witherite had with OSSP and the amount OSSP routinely bills and accepts in satisfaction for patients who, similarly to Plaitniff, were treated on a lien (Topics 12, 13, & 14).  (See March 9, 2023, OSSP Subpoena, Ex. 5.) OSSP produced the requested records pertaining to Plaintiff, but otherwise objected to the remainder of the subpoena. The parties thereafter submitted their First Joint Discovery Statement, wherein OSSP took the position that Defendants' request for data showing the number of Witherite patients that treated with OSSP was not relevant because the existence of a referral relationship was speculative, and such data would not be indicative of a referral relationship between OSSP and Witherite. (See Doc. 63.)

The Court held its First Hearing on this dispute on May 23, 2023.  At that hearing the Court permitted Defendants to take a 30(b)(6) deposition of OSSP.  Defendants originally scheduled this deposition for July 26, 2023, but after OSSP indicated a conflict on that date, and additional scheduling delays, that deposition ultimately took place on November 8, 2023. (See First OSSP 30(b)(6) Notice, Doc. 75, Ex. 6.)

*First 30(b)(6) deposition of OSSP*

The topics for this 30(b)(6) deposition included: OSSP's prior or ongoing relationship with Plaintiff Alfred Norrington, and his attorneys (Topic 3); information concerning OSSP's medical records and billing platform, eClinicalWorks ("ECW"), and its ability to run a report through ECW, with specific step by step instructions concerning how to do so, concerning specific amounts billed and amounts accepted in

satisfaction of payment (Topics 4, 6, 17-24); OSSP's relationship with Medernix, LLC; (Topic 5); and the number of patients OSSP has treated who were represented by Witherite over the last four years. (Topic 10). (Id.)

Shockingly, despite OSSP having been previously sanctioned just one year earlier for putting up Mr. Heidari's neighbor's brother, a person who had no connection with OSSP, as its 30(b)(6) witness, and that deponent being unprepared to speak to numerous topics, and further despite OSSP informing a federal judge that it would "tak[e] steps to avoid similar problems in the future," OSSP pulled the same stunt again. Specifically, it hired a random worker's compensation attorney named John Hillis to serve as the corporate representative. (First OSSP 30(b)(6) Dep., Nov. 8, 2023, at 5:2-7; 9:19-21, attached as Ex. 7.) Mr. Hillis was not an employee of OSSP, and had never served as its corporate representative in the past. (Id. at 9:2-3, 16-18.) He was serving the corporate representative because OSSP "reached out to [him]." (Id. at 9:4-7.)

Unsurprisingly, Mr. Hills was not properly prepared to testify to the enumerated topics.  He claimed to have meet with several individuals at OSSP to prepare for the deposition, but he could not list any of those person's last names. (Id. at 11:11-12:9.) Early on in the deposition OSSP's counsel, Mr. Heidari, interposed an objection that all of Mr. Hillis' preparations were done in the presence of OSSP's counsel, and thus any conversations Mr. Hillis had were done in anticipation of litigation. (Id. at 12:10-13:21.) Mr. Hillis specifically testified that he **did not know** the following:

- Whether OSSP typically negotiates below what it initially bills to patients for the final settlement of a claim. (Id. at 20:3-11)

- Whether Plaintiff was still treating with OSSP as of the time of the deposition, or whether he had any future visits scheduled. (Id. at 27:3-16)

- Whether OSSP communicates with others outside of OSSP regarding the approval or disapproval of Plaintiff's treatment. (Id. at 29:22-30:1)

- Whether Medernix, LLC facilitates communications between patients, their law firms, and OSSP. (Id. at 34:1-35:9)

- Whether OSSP still works with Medernex, LLC, and if not, what entity took its place (conflicting testimony). (Id. at 36:1-37:15)

- When OSSP began using ECW and the full picture of how OSSP uses ECW, including the specific fields it utilizes within the platform. (Id. at 37:25-39:3)

- Whether OSSP, through ECW, tracks how much it ultimately accepts in satisfaction for a lien once a case is over. (Id. at 40:18-41:1)

- Whether OSSP, through ECW, can run a report showing patients that have an attorney in the attorney field and the total amount billed to each one of those patients, with redacted names of patients. (Id. at 41:6-20)

- What medical funding is, and whether OSSP has sold any of its account receivables related to Plaintiff to medical funding providers. (Id. at 46:2-19)

Setting aside this long list of information Hillis did not know, he did affirmatively confirm that OSSP did not market to plaintiff's attorneys. (Id. at 46:20-47:12.)

### Second Joint Statement

After OSSP botched its First 30(b)(6) deposition the parties submitted their Second Joint Statement on December 11, 2023, (Doc. 99) and the Court held a second hearing on December 20, 2023. At that hearing, the Court again agreed that the information that Defendant was seeking was discoverable, and in light of the lack of information that was provided in the 30(b)(6) deposition, extended discovery to allow Defendants to depose additional OSSP employes, including its CEO.  Thereafter, OSSP continued its delay games, and the deposition of OSSP's CEO, Steve Youd, was not scheduled until February 24, 2024.

### Deposition of OSSP CEO, Steve Youd

Youd testified that OSSP has 46 to 47 clinics and its annual revenue for tax year 2023 was estimated to be between ▮▮▮▮▮▮▮▮▮▮ dollars. (Dep. Steve Youd, Feb.14, 2024, at 25:24-26:7; 26:21-23, attached as Ex. 8.)[1]  Of note, for that revenue of ▮▮▮▮▮▮▮▮ dollars, the amount OSSP billed that same year was "*triple or more*" that amount. (Id. at 28:17-24.)  Despite being the CEO of this very large company,

---

[1] OSSP designated portions of the Youd Deposition as Highly Confidential pursuant to the Court's Protective order, which Defendants have redacted. (Doc. 112.) Similarly, it designated the entire transcripts of the Second, Third, and Fourth 30(b)(6) depositions, and the deposition of Faith Beltzhoover as Confidential, and thus Defendants have redacted these sections of the Brief as well.

Youd did not know who OSSP's CPA is (Id. at 21:19-21); whether OSSP uses accounting software; whether it has the ability to prepare a profit and loss statement (Id. at 22:17-24); or how the billing rates at OSSP are set. (Id. at 22:17-24).

Youd acknowledged that OSSP handled its marketing through a "third party vendor" called Falcon Marketing, which, contrary to the prior 30(b)(6) testimony, he confirmed did market to attorneys on OSSP's behalf. (Id. at 51:21-52:3; 80:14-24). He acknowledged that attorneys are high value clients for OSSP (Id. at 83:24-84:22) and estimated that OSSP paid Falcon around $1M. (Id. at 52:15-22.)  However, Falcon Marketing "went out of business," and he did not know why. (Id. at 52:4-7.) Youd did not know that Falcon Marketing filed a termination with the Georgia Secretary of State right before it was going to be deposed in a different case. (Id. at 57:18-24.)

Per Youd, OSSP's bills are negotiated by a third party case management company called "Merenex." (Id. at 63:10-64:14.) He does not know how much OSSP paid Merenex. (Id. at 65:16-20.)  He is not involved with the approval of negotiated bills, and instead indicated that Mike Maselli handled such approvals. (Id. at 66:1-8.) During his deposition, Youd was shown corporate filings of numerous companies, including AVO Accounting, EZ Health, Black Crystal, and Ortho Accounting, LLC, which either shared the same address of OSSP's office (the address where Youd's deposition was held) and/or were created by OSSP's counsel, Yasha Heidari's law firm. He denied knowing what any of those entities were. (Id. at 69:7-74:23; 76:20-78:16.)

Following Youd's deposition, as a result of OSSP's delay tactics in the scheduling of depositions, Defendants moved to extend discovery (Doc. 113) and the Court held an in person hearing on that motion on April 10, 2024. Following that hearing, Defendants were permitted to take a second 30(b)(6) deposition, as well as the depositions of OSSP's CGO Mike Maselli, and its billing director, Faith Beltzhoover. After additional delays, those depositions took place on July 30, 2024.  (Second OSSP 30(b)(6) Notice, Doc. 148, attached as Ex. 9; see also Docs. 146 & 146.)

*Second 30(b)(6) of OSSP*

Mike Maselli appeared as OSSP's corporate representative for the second 30(b)(6) deposition in addition to appearing in his individual capacity.  As OSSP's corporate representative, Maselli **elected to not prepare** for the following topics:

- ██████████████████████████████████████████████████████ ████████████████████████████████████

- ████████████████████████████████████████████████████████████

- ████████████████████████████████████████████████████████

- ██████████████████████████████████████████████████████ █████████████



---

[2] AVO Accounting, LLC and Ortho Accounting, LLC's corporate filings show they share the shame corporate address as OSSP, and Yasha Heidari's law firm created both of those entities, in addition to EZ Health, LLC.

*Deposition of OSSP Billing Manager, Faith Beltzhoover*

████████████████████████████████████████

████████████████████████████████████████

***Third Joint Statement***

The parties submitted their Third Joint Statement on August 30, 2024, (Doc. 151) and the Court held a third hearing on September 11, 2024. At the hearing, the Court again found that the information Defendants were seeking was warranted and that there were numerous topics previously presented to which OSSP had failed to provide answers. In an effort to streamline this ongoing discovery dispute, the Court and all parties discussed using interrogatories and RFPDs, followed by additional depositions if needed, to close the gap on the missing information. OSSP made no objection to the use of interrogatories and RFPDs, despite it being a non-party.

Defendants then promptly served four RFPDs and 22 Interrogatories on OSSP. Specifically, these requests sought the production of the requested ECW report; accounting reports showing the amount of money OSSP has received from Witherite over a four year period; information concerning newly disclosed third-party billing companies and whether they performed any work on Norrington's case; accounting details; information pertaining to the newly formed and disclosed "ASO" marketing entity; and information concerning the numerous entities that shared a common address with OSSP which were created by OSSP's attorney, which to date OSSP had denied knowledge of. (See Interrogatories to OSSP, Ex. 12; RFPDs to OSSP, Ex. 13.)

Delaying once again, OSSP requested an extension of time to respond to the requests, and then on October 31, 2024, an entire two months after the hearing, OSSP objected to responding to the requests because written discovery requests to not apply to a non-party. OSSP refused to respond to any of the Interrogatories. It indicated that it "shall produce" a report from its ECW platform, but that did not occur.

### *Fourth Joint Statement*

After OSSP ignored Defendants' written discovery requests the parties submitted their Fourth Joint Statement addressing same. (Doc 159.) Thereafter, on November 11, 2024, the Court issued an Order admonishing OSSP for its continued improper efforts to avoid discovery in this case, and specifically for refusing to respond to the written discovery requests after not objecting to that procedure at the last hearing. (Doc. 160.) In that same Order, the Court invited Defendants to file a Motion for an Evidentiary Hearing, which was held on December 11, 2024.

At this evidentiary hearing, Defendants subpoenaed Mike Maselli and Faith Beltzhoover and called them both as witnesses. Despite both of them being highly involved in the management of the company, neither of those individuals could explain how OSSP handled its accounting or how it processed payments. Beltzhoover specifically testified that OSSP has a "processing department" that handles payments, but she could not explain what they do or who at OSSP was the head of that department. (Dec. 11, 2024 Hearing Trans. 68:24-69:5.) Neither witness could explain how third

party billing companies are assigned to lien cases, why there was no oversight of those companies' negotiation of bills, or which third-party billing companies worked on Norrington's case.  (Id. at 30:23-37:15; 64:18-72:16.)

At the end of the hearing, counsel for OSSP ceremoniously gave undersigned counsel a box containing hundreds of pages of a printed out spreadsheet that it represented was the ECW report Defendants requested.  Also, given OSSP's persistent stonewalling on details concerning accounting practices and its use of third-party billing companies, the Court permitted Defendant to take a Third 30(b)(6) of OSSP concerning its accounting practices, and allowed Defendant to serve a subpoena to Witherite directly regarding communications its office had with OSSP's third-party companies.

Defendants then promptly served Witherite with a subpoena, and Witherite provided numerous communications between its office, a related company of its own called "Med Wrecks," and a third-party billing company hired by OSSP called "Fortress Data Solutions" ("FDS").  Defendants had previously asked OSSP numerous times in both depositions and at the Evidentiary Hearing to list all third-party billing companies it used, and FDS was never disclosed.  FDS has a skeletal website that does not list any type of business address and it does not appear to be an incorporated entity.  Witherite was not able to explain what FDS was, so Defendants subpoenaed Aracelis Delgado, one of the FDS employees who corresponded with Witherite and Med Wrecks concerning Norrington's case, for a deposition.

*Deposition of Aracelis Delgado*

Delgado was noticeably dodgy in her deposition. Despite working at the same address for the last five years, she could not state the address of her employer, or describe where that office was located beyond it being somewhere on Roswell Road. (Dep. Delgado, Mar. 19, 2025, Ex. 14, at 26:16-28:20.) Oddly, she testified that contrary to the signature block on her email, she did not work for FDS, but instead another company called Maranex. (Id. at 5:11-16.) She could not explain what FDS does. (Id. at 15:13-16:7.) She testified that all of her work is with patients who have an attorney, and she communicates with OSSP and law firms in litigated cases concerning the negotiation of liens. (Id. at 14:12-15; 18:14-20; 48:2-18.) She has access to OSSP's billing platform, ECW, but contrary to Faith Beltzhoover's testimony, she denied having the ability to enter data and run reports in that system. (Id. at 53:22-54:12.) Delgado testified that Maranex/FDS utilizes a separate software platform to manage patients on behalf of OSSP called Fortress IQ. (Id. at 23:21-24:4.)

Importantly, Delgado testified that the Fortress IQ database tracks the names of patients; the treating facility; the patient's attorney; available insurance for the third party; details concerning how the accident occurred; recommended procedures; the amount billed by the provider; and the amount ultimately accepted/reduced on the billed amount. (Id. at 24:12-17; 42:3-25; 49:21-24.) However, recommendations for procedures that Delgado routinely makes to attorneys for litigated lien patients

only occurs over the telephone, and is not written. (Id. at 66:1-21.)  Alarmingly, Delgado could not remember how she was paid, or whether her compensation was tied to the ultimate lien negotiations she handles. (Id. at 31:15-32:21.)

After Delgado's deposition, Defendants were able to locate an office for what it understood to be "Maranex" in Sandy Springs, and sought to serve it with a subpoena for records.  Maranex avoided service, and after Defendants utilized two different process servers it eventually got Maranex served with a subpoena to produce documents on 4/10/25. (Maranex Subpoena, Ex. 15.) But Witherite then objected to the Maranex subpoena making the same collateral source arguments that this Court has already rejected multiple times in this case already.

### Fifth Joint Statement

Following Witherite's objections to the Maranex subpoena, the parties submitted yet another joint discovery statement (Doc. 184), and the Court held a remote Zoom hearing on May 7, 2025.  At that hearing, the Court overruled Witherite's objections and permitted Defendants' subpoena to Maranex to proceed.  Maranex thereafter responded to the subpoena as "Premier Medical Consultants, LLC (d/b/a Maranex).[3]" It provided call logs showing non substantive entries of when Maranex/FDS/PMC contacted Witherite's office; records regularly tracking Norrington's medical bill totals

---

[3] Per the Georgia Secretary of State Website, Premier Medical Consultants, LLC dissolved on September 13, 2024, and was not a functioning incorporated entity at the time it responded to Defendants' subpoena. (Georgia Secretary of State Filing.)

as his case progressed; and notes concerning how much liability insurance Defendants had and whether liability was accepted. Maranex refused to produce any reports showing what OSSP billed and ultimately accepted for its bills, which Delgado testified was contained in its Fortress IQ system, claiming that it can't run such reports. Defendants currently have no means to verify that contention.

While the dispute with Maranex/FDS/PMC was ongoing, Defendants continued seeking the discovery from OSSP that it was continuing to take great lengths to avoid. Upon review of the hard copy ECW report that OSSP produced at the evidentiary hearing, it was estimated that the document contained approximately 89,000 lines of data, but prior to converting the report from excel to a .pdf OSSP had removed numerous fields that were included in the requested report, including payee names, change in AR, and dates. Defendants requested a full electronic version of the report, with the missing fields, but OSSP refused to do provide the same.

Also, on April 22, 2025, Defendants took the Third 30(b)(6) deposition of OSSP concerning OSSP's accounting. It was made clear at the Evidentiary Hearing that Defendants would be permitted to seek discovery on how OSSP processed its payments. Previously OSSP elected to not prepare for specific accounting related 30(b)(6) topics, and both Faith Beltzhoover and Mike Maselli testified in the Evidentiary Hearing that they had no knowledge of how OSSP's accounting was handled. Defendants' Notice included a single topic that instructed OSSP to prepare a

witness on "[a] description of how payments are processed and accounted for when they are received by OSSP including the name and any computer software systems that are used in that process . . . ." (Third OSSP 30(b)(6) Notice, Doc. 180, Ex. 16.)

Mike Maselli appeared as the 30(b)(6) witness, and staying true to form, completely failed to prepare for this narrow and specific portion of the deposition topic. (Third OSSP 30(b)(6) Dep., Apr. 22, 2024, Ex. 17, 8:24-15:13.) █████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

█████████████████████████████████████

### Sixth Joint Statement

The parties submitted their Sixth Joint Statement (Doc. 188) after OSSP had now failed to properly prepare a third time for a 30(b)(6) deposition in federal court, and another in person hearing was held on August 12, 2025. While noting that it appeared they were hiding something, the Court admonished OSSP for once again not properly preparing a witness for a 30(b)(6) deposition, and permitted Defense counsel to hold a Fourth 30(b)(6) deposition of OSSP concerning its accounting with specific topics

concerning same.  The Court further directed OSSP to produce the full version of the ECW report that it had previously produced with missing fields in an unusable format.

Defendants then promptly reached out to OSSP to schedule the Fourth 30(b)(6) deposition, and requested the full version of the ECW report.  The Fourth 30(b)(6) deposition was not held until October 2, 2025 (Fourth OSSP 30(b)(6) Notice, Doc. 196, Ex. 18.)  The notice laid out 13 very specific accounting related topics. (Id.)  Mike Maselli appeared again as OSSP's corporate representative, but shockingly, in yet another brazen effort by OSSP to avoid preparing for a 30(b)(6) deposition, he did absolutely nothing to prepare for the deposition.  ████████████

████████████████████████████████

████████████████████████████████

████████████████████████████

Defendants carefully crafted the deposition topics in an effort to prevent OSSP from playing games with semantics and further delaying and avoiding discovery.  For example, Topics 1 and 2 referenced OSSP's "processing department" which was the precise verbiage Faith Beltzhoover used to describe the OSSP employees that processed payments before her department entered them into ECW.  But in the Fourth 30(b)(6) deposition Maselli ██████████████████████

████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████

After the Fourth 30(b)(6) deposition, Defendants asked OSSP to produce the payment ledger, and additionally followed up on the updated full version of the ECW report.  OSSP provided a .pdf version of a heavily redacted payment log from an unknown system, as well as 19 check images from various law firms.  Also, on November 5, 2025, OSSP produced an updated ECW report in electronic format.  The original report that it produced had missing fields, and contained approximately 89,000 lines of data.  This updated report now had the missing fields, but it only contained 5,902 lines of data – which is only a fraction of what OSSP was ordered to produce.[4]

### Seventh Joint Statement

On November 11, 2025, the parties submitted their Seventh Joint Statement (Doc. 203) and the Court held another in person hearing on December 9, 2025.  At the beginning of the hearing the Court addressed the concerning issue of OSSP feeding Mr. Maselli a transcript to read from for the Fourth 30(b)(6) deposition.  The Court found that Defendants should be able to obtain evidence of checks from OSSP, which they demonstrated they can provide. OSSP then stated it can only produce 30 days' worth

---

[4] OSSP later produced a third version of the ECW report containing 596,068 lines of data, but it has yet to produce an electronic version of the original report containing 89,000 lines that it was ordered to produce.

of checks, so it was agreed that Defendants can subpoena the Witherite firm in addition to OSSP for the payment information.  The Court further found that an Evidentiary Hearing would be appropriate to further address the outstanding discovery issues.  The date for that hearing has been set for February 24, 2026.

Following the December 9, 2025, hearing, Defendants served OSSP and Witherite with identical subpoenas requesting payment details between OSSP and Witherite over a four period. (See Payment Subpoenas, Ex. 20 and 21.)  OSSP served objections, and has requested two different meet and confer calls regarding the subpoena, but has not produced any checks or payment information.  On the other hand, Witherite responded with a chart in .pdf format that it marked as "Highly Confidential" that outlined payments to OSSP for ████**different patients**.  (See Witherite Payment Report, Ex. 22.) The .pdf document that was produced does not allow Defendants total the amounts of the listed payments, but based on Defendants number crunching of the .pdf report, Witherite has paid OSSP ████████ over four years.

Throughout this entire process OSSP has denied it maintains a referral relationship with Witherite.  This figure unequivocally demonstrates that not only is there an extensive referral relationship, but this relationship is also extremely profitable for both parties. Bear in mind that this figure is not the amount billed by OSSP – it is the final amount negotiated by Witherite.  The amount billed is expected to be multiple times that figure.  However, Defendants still do not have that information.

## III.   ARGUMENT AND CITATION OF AUTHORITY

Parties that fail to comply with a subpoena served pursuant to Rule 45 may be held in contempt if they fail without adequate excuse to obey the subpoena or an order related to it. Fed. R. Civ. P. 45(g).  Also, Rule 37 provides for sanctions stemming from motions to compel, which include attorney's fees, as well as sanctions for the violations of court Orders. See Fed. R. Civ. P. 37(a)(5); (b)(2).

Pursuant to Fed. R. Civ. P. 30(b)(6), when a corporation is named as a deponent, the named organization must designate a witness to speak for the corporation and answer questions regarding "information known or reasonably available to the organization" on the matters noticed to them. To that end, the organization has an "affirmative duty" in preparing its designed witnesses so they may give "complete, knowledgeable, and binding answers on behalf of the corporation." Strategic Decisions, LLC v. MLK, Jr. Ctr. for Nonviolent Soc. Change, Inc., No. 1:13-cv-2510-WSD, 2015 U.S. Dist. LEXIS 58814, at *18 (N.D. Ga. May 5, 2015). "If a 30(b)(6) witness is not knowledgeable about relevant facts, and the organization has failed to designate an available, knowledgeable, readily identifiable witness, then the appearance is, for all practical purposes, no appearance at all." Id. (internal citations omitted).  If a party has objections to the topics of a 30(b)(6) notice, then it must file a pre-deposition motion – a corporation cannot

simply refuse to obey a notice. <u>Mfrs. Alliance Ins. Co. v. Brencorp, Inc.</u>, No. 4:15-cv-0140-HLM, 2016 U.S. Dist. LEXIS 203689, at *38. (N.D. Ga. Aug. 3, 2016).

Sanctions for the failure of designated witness to appear for a properly noticed Rule 30(b)(6) notice include, but are not limited to, requiring either the party that failed to act, their attorney, or both, to pay the "reasonable expenses, including attorney's fees, caused by the failure." FRCP 37(d)(3); <u>Hilton v. Brooks Cnty. Sch. Dist.</u> No. 7:20-CV-227, 2022 U.S. Dist. LEXIS 179849, at *13-14 (M.D. Ga. Sep. 30, 2022) (awarding costs of first and second 30(b)(6) depositions, including court reporter fees and attorney's fees, as sanctions for failing to produce a prepared Rule 30(b)(6) witness); <u>Consumer Fin. Prot. Bureau v. Univ. Debt Sol., LLC</u>, No. 1:15-CV-859-RWS, 2017 U.S. Dist. LEXIS 146222, at *12-24 (N.D. Ga. Aug. 25, 2017) (finding that the use of "memory aids", which were little more than scripts, by 30(b)(6) witness, and baseless objections by counsel warranted sanctions including the striking of several of plaintiff's counts from the litigation); <u>Strategic Decisions</u> at *26 (holding that sanctions were appropriate when defendant's designated 30(b)(6) witness failed to review documents or interview knowledgeable parties regarding Plaintiff's allegations, and was thus "completely unprepared" to testify).

## IV.   <u>CONCLUSION AND REQUEST FOR RELIEF</u>

As shown herein, OSSP has established a pattern of abuse of the discovery process by amongst other things, taking affirmative steps to hide information from

discovery; refusing to follow Orders of this Court issued after discovery conferences; the presentation of false testimony under oath; and making a mockery of its obligations for four separate 30(b)(6) depositions.  Defendants request that the Court appropriately sanction OSSP for is discovery abuses, to include the payment of Defendants' reasonable attorney's fees, and if the Court deems appropriate, further penalize OSSP in the amount of $276,838.60 in claimed charges in this case, or the striking of its related damages from Plaintiff's suit. See e.g., Sciarretta v. Lincoln Nat. Life Ins. Co., 778 F.3d 1205 (11th Cir. 2015) (upholding an $850,000 sanction against non-party financing company based upon findings that the company had in bad faith prepared a 30(b)(6) witness in order to thwart discovery and further its financial interests).

Respectfully submitted on the 18th day of February 2026.

McMICKLE, KUREY & BRANCH, LLP

/s/ Matthew R. Sessions *(by CSO)*
Kevin P. Branch
Georgia Bar No. 111839
Matthew R. Sessions
Georgia Bar No. 899806
217 Roswell Street, Suite 200
Alpharetta, GA 30009
Telephone: (678) 824-7800
msessions@mkblawfirm.com
kpb@mkblawfirm.com

O'DANIEL McDONALD, LLC

/s/ Clay S. O'Daniel
Clay S. O'Daniel
Georgia Bar No. 843070
William S. Weston
Georgia Bar No. 929666
9040 Roswell Road, Suite 500
Atlanta, GA 30350
(404) 419-6300
codaniel@odmclaw.com
wweston@odmclaw.com

## **CERTIFICATE OF COMPLIANCE**

The undersigned hereby certifies that the forgoing pleading complies with the font and point selections approved by the Court in Local Rule 5.1C. This document has been prepared in Times New Roman font, 14 point.

/s/Clay S. O'Daniel
Clay S. O'Daniel

## CERTIFICATE OF SERVICE

The undersigned attorney does hereby certify that a true and correct copy of the within and foregoing **BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SANCTIONS AGAINST NON PARTY ORTHO SPORT AND SPINE PHYSICIANS, LLC** was duly served upon all counsel by using the CM/ECF system which will automatically send e-mail notifications of such filing to the following attorney of record:

<table>
<tr><td>David J. Beaird<br>Kelli B. Hooper<br>WLG Atlanta, LLC<br>600 Peachtree Street, NE, Suite 4010<br>Atlanta, GA 30308<br>jeffrey.beaird@witheritelaw.com<br>kelli.byers-hooper@witheritelaw.com</td><td>Henry D. Fellows, Jr.<br>Arielle I. Frank<br>Fellows LaBriola, LLP<br>Suite 2400 Harris Tower<br>233 Peachtree Street, N.E.<br>Atlanta, Georgia 30303<br>hfellows@fellab.com<br>afrank@fellab.com</td></tr>
</table>

Yasha Heidari
E. David Szczepanski
Delgado Heidari, LLC
2997 Cobb Parkway #724615
Atlanta, Georgia 31139
yasha@hplawgroup.com
eds@hplawgroup.com

This the 18th day of February 2026.

/s/Clay S. O'Daniel
Clay S. O'Daniel